NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| YANET CANDELARIO SALAZAR, | : | |
| | : | Civil Action No. 17-1099 (JMV) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ORLANDO RODRIGUEZ, | : | |
| | : | |
| Respondent. | : | |

APPEARANCES:

SELAH TENET NANCY WYCHE
Selah Wyche, P.C.
325 Chestnut Street, Suite 800
Philadelphia, PA 19106
  on behalf of Petitioner

BRYAN K. LONEGAN
Office of Immigration Litigation
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
  on behalf of Respondent

**VAZQUEZ**, United States District Judge

  On February 17, 2017, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1), challenging her prolonged detention by U.S. Immigration and Customs Enforcement ("ICE"). On March 1, 2017, Petitioner, who had obtained counsel, filed an amended petition under § 2241, challenging her indefinite detention since August 11, 2016. (ECF No. 3.) On April 21, 2017, Respondent filed an answer, opposing habeas relief on the basis that Petitioner has received all of the due process protection afforded to an arriving alien detained under 8 U.S.C.

§ 1225(b)(2)(A). (ECF No. 8.) Petitioner filed a reply on May 24, 2017. (ECF No. 13.)

For the reasons that follow, the Court grants the amended habeas petition and orders that Petitioner receive a bond hearing before an Immigration Judge within thirty days of this Opinion and accompanying Order.

## I. BACKGROUND

In her amended petition for habeas corpus relief pursuant 28 U.S.C. § 2241, Petitioner alleges she has been in the custody of ICE, and is presently held in Elizabeth Detention Center, since August 11, 2016. (ECF No. 3 at 2.) Petitioner is a native and citizen of Cuba, and a citizen of Canada. (*Id.* at 3.) She had resided in the United States since 2013. (*Id.*) On May 11, 2016, Petitioner departed the United States to attend a conference in Panama. (*Id.*) When she returned to three days later, she was granted deferred inspection, and was directed to report to a field office to apply for adjustment of status. (*Id.*)

Petitioner attempted to apply for adjustment of status at USCIS New York City Field Office, but she was told she had to apply by mail. (*Id.* at 4.) On August 11, 2016, Petitioner reported to JFK Airport in New York, and she was taken into custody by ICE, not having applied for adjustment of status. (*Id.*) Petitioner was treated as a Canadian citizen and not a Cuban citizen. (*Id.*) At the time she filed her amended habeas petition, Petitioner's application to adjust status pursuant to the Cuban Adjustment Act was pending. (*Id.*)

On October 24, 2016, Petitioner, represented by counsel, attended an appointment at the USCIS Newark Office, and requested parole based on her Cuban citizenship. (ECF No. 3 at 4.) The USCIS Officer declined because an ICE officer reported that Petitioner's pending humanitarian parole request had been denied. (*Id.*) Petitioner contends her prolonged and indefinite detention violates her Fifth Amendment right to due process. (*Id.* at 5-9.) Petitioner

2

relies primarily on the holdings in *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2002); and *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011).

On April 21, 2017, Respondent filed an answer to the amended petition, opposing habeas relief. (ECF No. 8.) Respondent asserts the following facts in support of its position. Petitioner is a citizen of Cuba and Canada. (ECF No. 8-1, ¶3.) Petitioner was admitted to the United States, on May 22, 2013, as a visitor for pleasure, not to exceed November 21, 2013. (ECF No. 8-2, ¶2.) Petitioner remained in the United States until May 11, 2016. (ECF No. 8-1, ¶5.) On April 18, 2016, Petitioner filed an application for adjustment of status to become a lawful permanent resident. (ECF No. 8-2, ¶3.) The application was denied for failure to pay the required fee. (*Id.*) Petitioner filed a new application on May 10, 2016, with a fee waiver request. (*Id.*, ¶4.) The following day, Petitioner voluntarily left the United States, and returned on May 14, 2016. (ECF No. 8-1, ¶¶5-6; ECF No. 8-2, ¶¶5-6.)

Upon Petitioner's return to the United States, she was paroled in on deferred inspection status and required to report to customs officials at JFK Airport on August 11, 2016. (ECF No. 8-1, ¶7; ECF No. 8-2, ¶6.) On May 27, 2016, USCIS denied Petitioner's request for a fee waiver. (ECF No. 8-2, ¶4.) Therefore, her application for adjustment of status was rejected. (*Id.*) On August 11, 2016, ICE revoked Petitioner's parole and issued her a Notice to Appear in Immigration Court for removal Proceedings, took her into custody, and charged her as inadmissible under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(9)(B)(i)(II). (ECF No. 8-1, ¶8; ECF No. 8-2, ¶7.) On August 17, 2016, Petitioner filed a third application for adjustment of status, which USCIS rejected on March 13, 2017, because her departure from the United States had triggered the unlawful presence bar of 8 U.S.C. § 1182(a)(9)(B)(i)(II), rendering her inadmissible. (ECF No. 8-2, ¶8.)

In the meantime, on August 29, 2016, an immigration judge ruled that he lacked

jurisdiction to review Petitioner's custody status because she is an arriving alien. (ECF No. 8-1, ¶9; ECF No. 8-3.) On September 12, 2016, ICE denied Petitioner's request for discretionary parole. (ECF No. 8-1, ¶10; ECF No 8-4.) On March 6, 2017, an Immigration Judge ("IJ") granted Petitioner withholding of removal to Cuba but ordered her removed to Canada. (ECF No. 8-1 at ¶11; ECF No. 8-3.) On April 4, 2017, Petitioner filed an appeal with the Board of Immigration Appeals. (ECF No. 8-1, ¶12.) As of the date of Respondent's Answer, the appeal was pending before the BIA. (*Id.*)

Respondent opposes habeas relief. (ECF No. 8.) Respondent contends that because Petitioner is an arriving alien detained pursuant to 8 U.S.C. § 1225(b)(2)(A), her detention is authorized by statute and constitutionally permissible without a bond hearing. (ECF No. 8 at 13.) Furthermore, Respondent contends Petitioner's detention has not exceeded a reasonable time period. (*Id.*)

First, Respondent maintains that Petitioner is detained under a statutory scheme for arriving aliens where an IJ may not conduct a bond hearing to determine whether such an arriving alien should be released into the United States during removal proceedings. (ECF No. 8 at 12, citing 8 U.S.C. § 1225(b)(2)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B)). Arriving aliens may, however, seek parole from DHS, which may be granted for "urgent humanitarian reasons" or "significant public benefit," as long as the alien poses neither a security risk nor a threat of absconding. (*Id.* at 12, citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b-c), 235.3(b)(4)(ii), 235.3(b)(2)(iii), 235.3(c)).

Second, Respondent disputes Petitioner's argument that the Third Circuit's holdings in *Diop* and *Chavez-Alvarez*[1] should be applied to aliens in detention under § 1225(b)(2)(A), because Congress is permitted to provide "differing systems for detention of aliens arriving at the nation's

---

[1] *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015).

borders versus those already within the United States." (*Id.* at 14-15.) Respondent relies on *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), arguing that "Congress may authorize the detention of aliens at the border for prolonged periods of time without depriving an alien 'of any statutory or constitutional right.'" (*Id.* at 16.) Respondent further asserts that such detention is constitutionally permissible because it is necessary to give effect to Congress's authority "to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." (*Id.* at 17, quoting *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Boutilier v. Immigration and Naturalization Service*, 387 U.S. 118, 123 (1967)).

Respondent notes that in *Zadyvdas*, the Supreme Court reiterated "[i]t is well-established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." (*Id.* at 18, quoting *Zadvydas*, 533 U.S. at 693.) Thus, Respondent concludes that non-admitted, arriving aliens "have no due process protections beyond those afforded by statute." (*Id.* at 19.)

In reply, Petitioner contends that arriving aliens are entitled to "some amount of due process." (ECF No. 13 at 9.) Petitioner suggests "aliens who still have a possibility of relief from removal, such as asylum, are even more deserving of constitutional protection than the aliens in *Zadvydas* who were definitely removable." (ECF No. 13 at 11, citing *Rodriguez v. Robbins*, ("*Rodriguez I*"), 715 F.3d 1127, 1139 (9th Cir. 2013)). Petitioner also likens aliens detained under § 1226(c) to aliens detained under § 1225(b)(2)(A), because they are not statutorily "entitled to an individualized bond hearing to determine if their detention is appropriate under their circumstances." (*Id.* at 11.) Petitioner notes that many courts have limited mandatory immigration detention, without a bond hearing, to a reasonable period of time. (*Id.* at 14-18.) Petitioner

5

concludes:

> [b]ecause aliens detained under § 1225(b)(2)(A) have no access to an individualized determination regarding whether they are properly placed in the § 1225(b)(2)(A) category or properly detained because they present a flight risk and a danger to the community, the Court should find that detention pursuant to § 1225(b)(2)(A) is subject to a reasonable time limitation.

(*Id.* at 18.)

II. DISCUSSION[2]

Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), which states, in relevant part, that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C.] § 1229a.

Arriving aliens are inspected immediately upon arrival in the United States and, unless "'clearly and beyond a doubt entitled to be admitted,'" are placed in "removal proceedings to determine admissibility." *Clark v. Martinez*, 543 U.S. 371, 373 (2005) (quoting 8 U.S.C. § 1225(b)(2)(A)). Arriving aliens are subject to expedited removal and are not entitled to a hearing or appeal on the determination of inadmissibility. 8 C.F.R. § 1235.3(b)(1)(i), (b)(2)(ii)). If an arriving alien applies for asylum or demonstrates a fear of persecution, he is referred for a credible fear interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(i). If the alien is found to have a credible fear of persecution, he is placed in removal proceedings under 8 U.S.C. § 1229a, rather than the expedited removal proceedings, for a determination of the asylum claim. *Castro v. United*

---

[2] The Court has jurisdiction over this matter because Petitioner is in custody, allegedly in violation of the United States Constitution, within the Court's jurisdiction. 28 U.S.C. § 2241; *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

*States Dep't of Homeland Sec.*, 835 F.3d 422, 425-26 (3d Cir. 2016); 8 C.F.R. § 208.30(f).

Pursuant to the statutory and regulatory scheme, § 1225(b)(2)(A) essentially requires mandatory detention for aliens. 8 C.F.R. § 1235.3(b)(2)(iii); *see also Tineo v. Ashcroft*, 350 F.3d 382, 387 (3d Cir. 2003). Such aliens are not entitled to a bond hearing under the regulations, *see, e.g.*, 8 C.F.R. § 1003.19(h)(2)(i)(B), but the statute does permit the Attorney General, through the Department of Homeland Security, to parole such aliens into the United States if "urgent humanitarian reasons or significant public benefit" so warrant. *See* 8 U.S.C. § 1182(d)(5)(A). This is the only parole relief contemplated by the statute and regulations. In addition, an immigration judge does not have authority to review the Attorney General's parole determination. 8 C.F.R. § 1003.19(h)(2)(i)(B).

This statutory limitation means that an arriving alien, like Petitioner, does not receive a hearing to determine if the justifications of flight risk and danger to the community apply to his detention. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B). As result, unless required by the Constitution, Petitioner is not entitled to release or a bond hearing pursuant to the statutory scheme.

The issue presented is whether the Due Process Clause provides relief for Petitioner. Neither the Supreme Court[3] nor the Third Circuit has addressed whether due process requires a detainee, being held pursuant to § 1225(b)(2)(A), to receive a bond hearing following a certain

---

[3] The Ninth Circuit in *Rodriguez v. Robbins* held that mandatory detention during removal proceedings under § 1225(b) is implicitly limited to a reasonable period of time. 804 F.3d 1060 (9th Cir. 2015), *cert. granted sub nom., Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016). The Ninth Circuit stated, "'the mandatory provisions of § 1225(b) simply expire at six months, at which point the government's authority to detain the alien shifts to § 1226(a), which is discretionary and which we have already held requires a bond hearing.'" *Id.* at 1070 (citing *Casas-Castrillon v. Dep't. of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008)). The Supreme Court did not issue a decision in this matter in its October 2016 term.

period of detention. Pursuant to a different statute, 8 U.S.C. § 1226(c), which mandates pre-removal order detention for aliens convicted of certain offenses, the Supreme Court held that detention without the possibility of bond for "the limited period of [] removal proceedings" is constitutional. *Demore v. Kim*, 538 U.S. 510, 530-31 (2003). Like § 1225(b)(2)(A), § 1226(c) indicates that the Government shall take into custody those removable aliens who have been convicted of certain crimes, and does not provide for a bond hearing once those aliens have been detained.

Following *Demore*, the Third Circuit concluded that § 1226(c) detention may raise constitutional concerns if detention becomes unreasonably prolonged. *Diop*, 656 F.3d at 223. In *Diop*, the Third Circuit stated that the reasonableness of a period of detention is "a function of whether it is necessary to fulfill the purpose of the statute." *Id.* at 234. Once detention becomes unreasonably prolonged, "the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Id.* at 231. *Diop*, however, did not indicate a specific period of time commensurate with a reasonable period of detention.

The Third Circuit addressed the length of detention in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). In that case, the Third Circuit clarified that, at least where no evidence of bad faith on the part of the petitioner has been presented, "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478.

Importantly, however, a petitioner held pursuant to § 1226(c) is considered to be an alien who previously entered the country. By comparison, a petitioner held under § 1225(b)(2)(A) is legally considered to have never entered the United States. Petitioner is in the latter category, and her status impacts the due process analysis. As the Supreme Court in *Zadvydas* observed, it "is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders[.]" 533 U.S. at 693. An alien's treatment "as if stopped at the border" has historically been held sufficient to justify lengthy and seemingly interminable detention. 533 U.S. at 692-93 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). Thus, an arriving alien, as is Petitioner, is legally treated as if stopped at the border and is therefore entitled to something less than the full array of rights usually conferred by the Due Process Clause.

The issue then becomes whether Petitioner's procedural due process rights[4] permit the government to hold her for a prolonged period of time, in light of the narrow categories under which Petitioner is eligible for parole. Judge Linares confronted this precise issue in *Damus v. Tsoukaris*, No. 16-933(JLL), 2016 WL 4203816 (D.N.J. Aug. 8, 2016). Following a thorough analysis of the legal issues, Judge Linares observed that federal courts were split on the issue. *Id.* at *4 (collecting cases). The *Damus* court noted that a number of courts have found that the distinction between aliens being held pursuant to § 1226 and those being held under §

---

[4] The question presented here concerns procedural, rather than substantive, due process. The Sixth Circuit has ruled that an alien stopped at the border nevertheless retains some substantive due process protections. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) (holding that at least the substantive portion of the Due Process Clause must apply to even those aliens at the border as to hold otherwise would permit the Government to "torture or summarily execute them[,]"a preposterous proposition); *see also Lynch v. Cannatella*, 810 F.2d 1363, 1373-74 (5th Cir. 1987) (observing that an excludable alien may not be subjected to brutality by government officials).

1225(b)(2)(A) is constitutionally insufficient to treat them differently so that those being held pursuant to § 1225(b)(2)(A) are also subject to a reasonable time limit. *Id.* (citations omitted). On the other hand, Judge Linares wrote, a number of federal courts have rule that the distinction is critical so that those aliens being detained under § 1225(b)(2)(A) are not entitled to a bond hearing while their removal hearings are pending. *Id.* (citations omitted).

Ultimately, the court in *Damus* ruled that "an alien's detention subject to § 1225(b)(2)(A) is subject to the limitation that his detention may continue only for a reasonable time at which point his continued detention would need to be warranted by more than a presumption based on his status as an applicant for admission alone." *Id.* In other words, the *Damus* court concluded that aliens with the same status as Petitioner did have some procedural due process rights. Judge Linares, however, found that such aliens had less due process protections than those being held under § 1226(c) so that the reasonableness presumption announced by the Third Circuit in *Chavez-Alvarez* did not apply. *Id.* While the court in *Damus* acknowledged that "it is unclear at what point in time such concerns would rise to level of requiring redress," it nevertheless held that the petitioner's detention of approximately eleven months was not yet unreasonable. *Id.*

Following *Damus*, Judge Wigenton addressed the same question in *Gregorio-Chacon v. Lynch*, No. 16-2768(SDW), 2016 WL 6208264 (D.N.J. Oct. 24, 2016). After quoting *Damus*, Judge Wigenton similarly found that aliens being held pursuant to § 1225(b)(2)(A) had some procedural due process protections. *Id.* at *5. The court in *Gregorio-Lynch* likewise determined that such protections were not coextensive with the protection afforded to those detained under § 1226(c) and, as a result, that a detention period of six months did not run afoul of the Due Process Clause. *Id.*

More recently, the Middle District of Pennsylvania also ruled on the same issue. *Singh v.*

*Sabol*, No. 16-2246, 2017 WL 1659029 (M.D. Pa. Apr. 6, 2017), *report and recommendation adopted*, 2017 WL 1541847 (M.D. Pa. Apr. 28, 2107). The court in *Singh* found that "arriving aliens detained pre-removal pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable." *Id.* at *4 (citation omitted). In *Singh*, the court determined that the period for which the petitioner had been detained, twenty-nine months, was unreasonable and ordered that the petitioner receive an individualized bond hearing within thirty days. *Id.*

In this matter, the Court agrees with the conclusions reached in *Damus*, *Gregorio-Lynch*, and *Singh*. Specifically, the Court finds that the Petitioner, being held as an arriving alien pursuant to § 1225(b)(2)(A), has some procedural due process rights. *Cf. Castro*, 835 F.3d at 449 n. 32 ("We doubt . . . that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance."); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 808 (W.D. Tex. 2015) ("Because aliens detained under § 1225(b)(2)(A) have no access to an individualized determination regarding whether they are properly placed in the § 1225(b)(2)(A) category or properly detained because they present a flight risk and a danger to the community, the Court finds that detention pursuant to § 1225(b)(2)(A) is subject to a reasonable time limitation."). The Court also agrees with *Damus* and *Gregorio-Lynch* in that an alien being held pursuant to § 1225(b)(2)(A) does not have the same due process protections as one being held under § 1226. *See Zadvydas*, 533 U.S. at 693. ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.") (citations omitted). Nevertheless, the amount of time that Petitioner has been detained by ICE– now, over one year – has become unreasonable, and Petitioner is entitled to an

individualized bond hearing.

### III. CONCLUSION

Petitioner has now been detained for one year. Her right to due process requires that she receive an individualized bond hearing. Therefore, the Court will order a bond hearing, governed by the procedures provided to aliens in discretionary detention under 8 U.S.C. § 1226(a). *See Diop*, 656 F.3d at 235 ("[s]hould the length of [the petitioner's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof."). The bond hearing must be held within thirty (30) days.

An appropriate Order follows.

Date: August 29, 2017            s/ John Michael Vazquez
At Newark, New Jersey          JOHN MICHAEL VAZQUEZ
                                                    United States District Judge